YARRUT, Judge.
This is a suit by Plaintiff (a construction company) against Defendant (home owner), to recover $5,749.39, plus 25% attorney’s fees on $5,500.00 of the amount, the $5,500.00 being the balance due on a construction contract entered into on September 30, 1964, and which, according to Plaintiff, became due at the completion of construction. The remaining $249.39 is for “extras” which Plaintiff claims it installed at the request of Defendant.
Defendant reconvened praying for an award of $2,500.00 to correct alleged defects in construction.
The contract involved an addition to Defendant’s home, together with a provision that the existing frame home be brick veneered; and provided for a $296.00 down payment, and the following provision:
“To facilitate payment, the Owner agrees to permit AA Home Improvement Co., Inc. (Plaintiff) to obtain a loan for him through a dependable source, at payments not to exceed $127.45 per month for 60 months. * * * ”
It is undisputed that Plaintiff obtained two loans for Defendant: (1) A $3,500.00 Title I, Federal Housing Authority, loan; and (2) a $2,000.00 United Credit Plan, Inc., loan. Together the payments totalled $118.56 per month, for 60 months.
It is also undisputed Defendant, at the completion of the work on January 16, 1965, refused to' sign the notes securing the loans. He gave as his reason, the alleged defects in construction.
The contract also provides:
“If it becomes necessary to employ an attorney to enforce any provisions of this contract, the Owner agrees to pay as attorney’s fees an additional sum of 25% of the amount involved.”
Defendant tendered to Plaintiff twenty-seven checks for $127.45 each, which were not accepted by Plaintiff. Therefore, with regard to attorney’s fees, the position of Defendant is that the contract gave him the right to pay for the work in installments and that because he tendered these installments, he is not liable for attorney’s fees.
The Trial Judge in his first judgment, dismissed Plaintiff’s petition for a money judgment of $5,749.39, and instead decreed Defendant make payments of $127.45 per month to Plaintiff, in accordance with the terms and conditions of the contract. He also gave judgment for extras to Plaintiff for $194.39, denying only a $55.00 item for plumbing charges, and further ruled each party was to pay his own costs. He did not mention Defendant’s reconventional demand, but in his reasons for judgment, stated he was dismissing it.
The Trial Judge later amended his judgment to award a lump sum of $5,500.00 to Plaintiff, thus implying Defendant had no right to pay in installments; but did not award attorney’s fees.
Plaintiff appealed asking for attorney’s fees on the $5,500.00; that it be allowed the $55.00 plumbing extra; and that Defendant bear all costs of these proceedings. Defendant answered the appeal asking the judgment be amended only to allow his reconventional demand.
We will first consider Defendant’s re-conventional demand. Defendant relied on the testimony of his son, William H. Shane, an architect and builder. The only substantial defects testified to by Mr. Shane, were the following:
(1) That Plaintiff failed to install rear steps. However, this item was not mentioned in the contract.
(2) That the windows installed by Plaintiff were four inches longer than those called for in the plans and specifications. However, Defendant wished to re-use a window which was four feet, six inches in *448 length, instead of the four feet, two-inch windows called for in the plans and specifications. When Erwin J. Smith, President of Plaintiff-Corporation, was notified of this discrepancy, he instructed his carpenter, Roland Bonial, to make all the windows the same size, as he thought this was what Defendant would want. Defendant testified that he watched the progress of the construction very closely. However, there is nothing in the record to indicate that he ever objected to the length of the windows during construction, which estops him to complain.
(3) That the brick work was defective. The brick mason, Richard Buchanan, testified that there were variations between the joints of the bricks because “imitation old bricks” were used and they come in varying sizes. On cross-examination William Shane admitted that some of the joints would be larger than others because of the type of brick used.
(4) That the front porch was not bricked. Mr. Buchanan testified he could not do a successful brick job because the porch only had a three-inch overhang. Significantly, Defendant did not include this item in the list of defects which he presented to Mr. Smith at the completion of most of the work.
(5) That the paneling is not plumb. Both Mr. Smith and Mr. Bonial testified that the three panels in question are plumb, but that the re-used window is not square; and that this causes the edge of the paneling on one side of the window to be closer to the bottom of the window than it is at the top.
It is undisputed that Defendant gave Mr. Smith a list of alleged defects, and that Mr. Smith, Mr. Bonial and Mr. Buchanan visited Defendant’s home to correct these defects; and when they stated they were finished, Defendant declined to sign the above-described notes, contending the job was not finished. He would not, however, tell them in what respect it was not finished.
The Trial Judge gave the following reasons for rejecting Defendant’s recon-ventional demand:
“Defendant’s demand for a reduction of the contract price for alleged defects in workmanship is not substantiated by the evidence. No repair of the alleged defects has been undertaken for over two years, and the only evidence presented on his behalf was the testimony of his son, a builder and architect, which was based on an inspection of the premises shortly before trial.
“The Court is further influenced by the fact that the defendant herein was a construction foreman and master carpenter for thirty years. He had daily opportunity to inspect the work as it progressed and to immediately pursue a course to protect his rights under the contract. While he may have registered some minor complaints through his wife, he obviously, in view of his experience, was either satisfied with the general progress of the work or had no real substantial complaint.
“Consequently, the Court denies the defendant’s claim for a reduction in the contract price.”
Under all the circumstances, especially in view of the Trial Judge’s reasons, we do not find the claim of Defendant for construction defects has any merit.
We also adopt as our own the Trial Judge’s reasons for the award that he allowed Plaintiff for “extras”:
“Insofar as plaintiff’s claim for extras furnished in the undertaking for electrical, plumbing, paneling, and brick work — which extras total $249.39, the Court is convinced that these extras with the exception of the plumbing charge of $55.00, were accomplished with the knowledge, consent and authorization of the defendant home owner. Further, the Court finds that said extra charges were most reasonable and the defendant benefited materially from them.”
*449 Next, we will consider the question of attorney’s fees. If the contract contemplated Defendant could choose to pay for the construction work in installments, no attorney’s fees are due, as these installments were timely tendered. However, if the entire $5,500.00 was due in a lump sum at the completion of the work, then the 25% attorney’s fees would be due.
 As stated above, the contract gives Plaintiff permission to obtain a loan for Defendant. Obviously, the purpose of this provision was to enable Plaintiff to receive the balance due it in a lump sum, while enabling Defendant to pay his loan in installments. Admittedly, two loans, totalling $5,500.00 were obtained by Plaintiff. Defendant argues that the words “a loan” are used in the contract, thus precluding Plaintiff from obtaining two loans. However, we find that the intention of the parties was that Plaintiff could obtain credit totalling $5,500.00, which did not prejudice Defendant when two loans were made, instead of one. Defendant also claims that the obtaining of two loans is in contravention of a Federal Housing Authority Regulation which prohibits a secondary loan, reading as follows:
“The proceeds of an insured loan shall not be used to supplement an uninsured obligation of the borrower, created in connection with the proposed alterations, repairs, or improvements, if the payment of the uninsured obligation is secured by a lien unless the insured loan is to be secured by a lien which has priority.” (F.H.A. Regulations, Title 24, Chapter 11, Sub-Chapter B, Part 201.7(c).)
It is clear from the notice of approval of the United Credit Plan, Inc. loan that this loan calls only for a note to be given, and not a mortgage or any other encumbrance upon the property. It is also clear that the Federal Housing Authority Regulation quoted above allows for a second loan, as long as that loan is not secured by a lien superior to the Federal Housing Authority loan. Therefore, we find no conflict with the Federal Housing Authority Regulation.
For the above reasons, the judgment is amended to award Plaintiff 25% attorney’s fees on its $5,500.00 award. It is also amended to provide Defendant to pay all costs in the District Court, as well as on appeal; otherwise, the judgment is affirmed.
Amended and, as amended, affirmed.